UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:15-CV-00095-GNS

BARBARA MCDERMOTT                                                    PLAINTIFF

v.

JOHNSTON LAW OFFICE, P.C., et al.                                   DEFENDANTS


**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants' Motion to Dismiss (Defs.' Mot. to Dismiss, DN 4). The motion is ripe for adjudication. For the reasons described below, the Court **GRANTS** Defendants' motion to dismiss.

## I.    BACKGROUND

Plaintiff Barbara McDermott ("McDermott") is the only child of Dorothy Bevan, now deceased. (Compl. 2, DN 1). McDermott maintains that all of her mother's real property, three parcels in all, passed to her by joint tenancy, but that nonetheless "an exceptionally well-connected North Dakota businessman" named Kevin Pifer ("Pifer") sued her in multiple lawsuits for those inherited properties.[1] (Compl. 2). McDermott hired Defendants, a North Dakota corporation and two individual residents of North Dakota, to represent her against Pifer. (Compl. 1-3).

On August 6, 2015, McDermott filed her Complaint in the present action.  McDermott alleges that Defendants committed malpractice in the handling of her case at both the trial and

---

[1] Of the three lawsuits, two were dismissed, and Pifer prevailed in the third. (Compl. 2-3). McDermott appealed the third lawsuit to the North Dakota Supreme Court, which affirmed the lower court decision. (Compl. 3).

appellate level. (Compl. 4-5, 6, 9-10). She also alleges that Defendants misappropriated funds held in escrow. (Compl. 5-6, 8-9). Finally, she alleges that Defendants perpetrated fraud, inasmuch as the bills that they sent her for legal services "contained numerous false charges and were sent with the intent to defraud Plaintiff." (Compl. 7-8).

## II.     STANDARD OF REVIEW

Motions pursuant to Fed. R. Civ. P. 12(b)(2) that are ruled upon without an evidentiary hearing require the Court to view the pleadings and any submitted affidavits "in a light most favorable to the plaintiff, and the district court should not weigh 'the controverting assertions of the party seeking dismissal.'" *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (quoting *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991)). The plaintiff need "make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal." *Id.* (internal quotation marks omitted) (quoting *Theunissen*, 935 F.2d at 549).

## III.    DISCUSSION

"[A] federal court must dismiss any claim for which it lacks jurisdiction without addressing the merits." *Chase Bank USA, N.A. v. City of Cleveland*, 695 F.3d 548, 553 (6th Cir. 2012). Accordingly, the Court must first determine whether it has jurisdiction over Defendants before it can rule on any other aspect of their motion to dismiss or McDermott's motion to file a first amended complaint.

"Personal jurisdiction over an out-of-state defendant arises from 'certain minimum contacts with [the forum] such that maintenance of the suit does not offend "traditional notions of fair play and substantial justice."'" *Air Prods. & Controls, Inc.*, 503 F.3d at 549 (alteration in original) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940))). In a matter founded on diversity jurisdiction under 28 U.S.C.

§ 1332, as this one is, the court "must look to the law of the forum state to determine the reach of the district court's personal jurisdiction over parties, subject to constitutional due process requirements." *Id.* at 550 (citation omitted).

The Court undertakes a two-step analysis to determine whether or not it has jurisdiction under Kentucky state law: "(1) first, the court must determine whether . . . [Kentucky's] relevant long-arm statute[] authorize[s] the exercise of jurisdiction over Defendants; and, if so, (2) the court must determine whether exercise of that jurisdiction comports with constitutional due process."[2] *Id.* Even if KRS 454.210 allowed Kentucky courts to exercise jurisdiction over nonresidents defendants, due process requires that "the nonresident generally must have 'certain minimum contacts . . . such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."'" *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (quoting *Int'l Shoe Co.*, 326 U.S. at 316 (alteration in original) (quoting *Milliken*, 311 US. at 463)).

There are two aspects of a nonresident defendant's relationship with the forum state that must be analyzed. *Id.* at 1121-22. "First, the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Id.* at 1122 (emphasis in original) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). "Put simply, however significant the plaintiff's contacts with the forum may be, those contacts cannot be 'decisive in determining whether the defendant's due process rights are violated.'" *Id.* (quoting *Rush v. Savchuk*, 444 U.S.

---

[2] Magistrate Judge Brennenstuhl undertook a thorough analysis of this case in light of Kentucky's long-arm statute in his January 13, 2016, order ruling on Plaintiff's Motion to File an Amended Complaint. (Order 5-12, DN 24). The Magistrate Judge correctly found that McDermott's case would not survive a motion to dismiss due to the fact that this Court does not have jurisdiction over this matter because it does not fall within one of the categories contained in Kentucky's long-arm statute; thus, he denied the motion to amend on the basis of futility. (Order 11-12). Because Magistrate Judge Brennenstuhl found a lack of personal jurisdiction under Kentucky's long-arm statute, it was unnecessary to analyze the case in light of the requirement of due process. The Court expressly adopts Magistrate Judge Brennenstuhl's analysis regarding personal jurisdiction under KRS 454.210.

320, 332 (1980)). Accordingly, McDermott's Kentucky residency is not sufficient to establish jurisdiction over Defendants. "Second, [the] 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.*

> [T]he plaintiff cannot be the only link between the defendant and the forum. . . . To be sure, a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties. But a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction.

*Id.* at 1122-23 (internal citations omitted) (citation omitted).

The Sixth Circuit decision in *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 720 (6th Cir. 2000), illustrates this principle well. In that case, Rowlette and Associates ("Rowlette"), a Minnesota-based corporation, and its president Jerry Rowlette, a Minnesota resident, contracted with Calphalon Corporation ("Calphalon"), an Ohio corporation, "to promote the sale of Calphalon's products, to keep Calphalon informed of market conditions, and to develop sales plans for customers" for one year in the states of Minnesota, Iowa, North Dakota, South Dakota, and Nebraska. *Id.* at 720. During that year, "Rowlette corresponded with Calphalon in Ohio via telephone, fax, and mail," and Jerry Rowlette made two physical visits to Ohio related to the contract with Calphalon. *Id.* At the end of the one-year contract, Calphalon notified Rowlette that it did not intend to renew the contract, and five months later, Rowlette's attorney notified Calphalon that it had claims of breach of contract and for unpaid commissions. *Id.* at 720-21.

Shortly thereafter, Calphalon filed suit against Rowlette and Jerry Rowlette in the United States District Court for the Northern District of Ohio seeking a declaratory judgment regarding the applicable law of the contract, the lawfulness of its termination of Rowlette, and its lack of obligation to pay additional commissions to Rowlette. *Id.* at 721. Rowlette entered a special

appearance and moved to dismiss, arguing that the court lacked specific personal jurisdiction. *Id.* The court agreed and dismissed the case. *Id.*

The Sixth Circuit found that the dismissal was proper. *Id.* at 724. It noted that the district court "correctly recognized that the mere existence of a contract between Rowlette and an Ohio citizen for seventeen months is insufficient to confer personal jurisdiction over Rowlette." *Id.* at 722. It affirmed a previous holding that it is "the *quality* rather than the *quantity* of the contacts [that] is the proper subject of review" when determining whether or not the defendant has the necessary minimum contacts with the forum state. *Id.*

The Sixth Circuit applied this holding and noted that "Rowlette's performance of the agreement was not focused on exploiting any market for cookware in the state of Ohio," and that Rowlette's communications with Calphalon in Ohio and Jerry Rowlette's visits to Ohio "occurred solely because Calphalon chose to be headquartered in Ohio, not because Rowlette sought to further its business and create continuous and substantial consequences in the state." *Id.* (internal quotation marks omitted) (citing *Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901, 911 (6th Cir. 1988)). Importantly, it noted that, "[a]rguably, Rowlette would have served as Calphalon's representative in the designated states, regardless of Calphalon's base of operation. Thus, Rowlette's contacts were precisely the type of 'random,' 'fortuitous,' and 'attenuated' contacts that the purposeful availment requirement is meant to prevent from causing jurisdiction." *Id.*

In this case, McDermott does not assert that Defendants' performance of the agreement—*i.e.*, representing McDermott in North Dakota state court—was focused on exploiting the market for legal services in Kentucky. She also does not claim that Defendants' communications to her in Kentucky were made to further their business and to create continuous and substantial

5

consequences in Kentucky. She has also not alleged that Defendants visited her in Kentucky. Further, as in *Calphalon Corp.*, it appears from McDermott's response that she does not contest that Defendants would have served as counsel to McDermott in the North Dakota matters regardless of where McDermott resided. Thus, as in *Calphalon Corp.*, Defendants' contacts were of the type that the purposeful availment requirement is meant to prevent from causing jurisdiction. The mere existence of a contract between Defendants and a Kentucky citizen for the duration of specific legal proceedings in another state is insufficient to confer personal jurisdiction over Defendants.

## IV.   CONCLUSION

Because this Court does not have personal jurisdiction over Defendants, Defendant's Motion to Dismiss (DN 4) is **GRANTED**. This matter is **STRICKEN** from the Court's docket.

**Greg N. Stivers, Judge**
**United States District Court**
March 18, 2016

cc:     counsel of record
        Barbara McDermott, *pro se*

6